LYNN SHEPARD, PLAINTIFF-RESPONDENT, v. WOODLAND TOWNSHIP COMMITTEE AND PLANNING BOARD, LARRY JONES AND SUNNY PINE, INC., a/k/a CREST-WOOD VILLAGE, INC., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 19, 1975—Decided June 30, 1975.

Before Judges COLLESTER, LORA and HANDLER.

*Mr. Robert J. Partlow* argued the cause for appellant Sunny Pine, Inc., a/k/a Crestwood Village, Inc. (*Messrs. Parker, McCay and Criscuolo,* attorneys).

*Mr. Mark A. De Marco* argued the cause for appellant Woodland Township Committee (*Messrs. Donio and De Marco,* attorneys).

*Mr. Charles A. Little* argued the cause for respondent (*Messrs. Bleakly, Stockwell and Zink,* attorneys; *Mr. H. Bruce Abbott* on the brief).

The opinion of the court was delivered by

LORA, J. A. D.   Defendants appeal from that part of the judgment of the Law Division whose opinion is reported at 128 *N. J. Super.* 379, holding subsection 8(a) of Art. VI, § 603, of the Woodland Township zoning ordinance unconstitutional insofar as it purports to confine the residents of a senior citizens community to persons who are 52 years of age or over, except for one child who may be 19 years of age or over.

Plaintiff contends not only that the qualification for residency, based upon age, is unconstitutional but additionally that the trial judge erred in his determination that authorization of a senior citizens community as a land use regulation is not foreign to the authority granted to municipalities in *N. J. S. A.* 40:55-30, 32.

Section 603, entitled "Special Uses" by the amendment in question, was employed to add an exception permitted in the residential-agricultural zone, under terms and conditions set forth therein as follows:

8. Senior Citizen Communities. In R-A Zones where one or more parcels of land having a contiguous total area of at least 500 acres are under common ownership or control, there may be established a Senior Citizen Community in accordance with the laws of the State of New Jersey and with the following additional requirements:

a. Age and Occupancy Requirements. The permanent residents of a Senior Citizen Community shall be confined to persons who are 52 years of age or over except that one child who is 19 years of age or over may be permitted to reside in any senior citizen dwelling unit occupied by his or her parent(s) or guardian(s). Full time occupancy of any residential unit shall be limited to 3 individuals.

We are of the view the quoted ordinance provisions do not constitute a valid exercise of the zoning power granted to municipalities by the enabling statute. As stated in *Taxpayers Ass'n. of Weymouth Tp. v. Weymouth Tp.*, 125 *N. J. Super.* 376, 380 (App. Div. 1973), certif. granted 65 *N. J.* 570:

Nothing in *N. J. S. A.* 40:55-30, which grants zoning powers to municipalities, authorizes a zoning regulation limiting the age of those, whether it be individuals or families, who may reside in a structure, be it a house or mobile home, otherwise permitted in a particular zoning district.

All that a municipality may validly be concerned with in the exercise of its zoning power is the physical use of lands and structures thereon. *Bridge Park Co. v. Highland Park*, 113 *N. J. Super.* 219, 221-222 (App. Div. 1971).

*Cf. Hinman v. Planning and Zoning Comm'n*, 26 *Conn. Sup.* 125, 214 *A.* 2d 131 (Comm. Pl. 1965). The provision for a senior citizens community does not involve the *physical use* of the land within the permissible district but rather seeks to regulate the age or makeup of the family unit permitted to reside in the structure in contravention of *N. J. S. A.* 40:55-30, 32, *Bridge Park Co. v. Highland Park*, 113 *N. J. Super.* 219, 221-222 (App. Div. 1971).

Defendants argue that Woodland Township is authorized to enact subsection 8(a) of the ordinance by virtue of its power to regulate land use to "promote health, morals or the general welfare * * *." *N. J. S. A.* 40:55-32. While we appreciate that senior citizens may have special housing needs

meriting special considerations, as evidenced by *N. J. S. A.* 55:14I–1 *et seq.,* the "Senior Citizens Nonprofit Rental Housing Tax.Law" and *N. J. S. A.* 55:14A–1 *et seq.,* the "Local Housing Authorities Law," and that housing needs are encompassed within the concept of general welfare, *Oakwood at Madison, Inc. v. Madison Tp.,* 117 *N. J. Super.* 11 (Law Div. 1971), certif. granted 62 *N. J.* 185 (1972), we are constrained to conclude that absent specific enabling legislation, zoning for senior citizens communities is not within the township's authority to regulate land use to promote the general welfare.

Evidence of such legislative interpretation of the scope of the enabling statute may be found in Assembly Bill No. 1338 introduced March 18, 1974 which passed both Houses of the Legislature but was vetoed by the Governor on April 7, 1975.

Defendants attempt to distinguish *Weymouth* from the instant case in that in *Weymouth* the physical use of the land was for mobile park homes irrespective of the age of its occupants, and the 52-year limitation was not functionally or directly related to the establishment of a senior citizen community, whereas the subject ordinance, by § 8(b), permits not only residences as a use of the land but also limited commercial facilities and service establishments intended primarily for the use and convenience of the residents of such senior citizen community, and by § 8(c) requires recreational and cultural facilities for their sole use. Then, too, they assert no exclusive zone has been established since senior citizen communities are merely a permitted use in a R–A zone. We find such distinctions to be without significance. The end result of the requirement of a contiguous total area of at least 500 acres under common ownership or control in effect constitutes a zone within a zone.

Having concluded that the amendment to the ordinance is invalid for the reasons above stated, we do not deem it necessary to pass upon the validity of the amended ordinance's qualification for residency, based upon age, and the limita-

tion of full-time occupancy of any residential unit therein to three individuals.

Affirmed as modified.

HANDLER, J. A. D. (dissenting). The majority adopts the view that the amendment to the municipal zoning ordinance of Woodland Township, authorizing as a special use "senior citizen communities," was not a valid exercise of the zoning power granted municipalities under the enabling statute. I respectfully differ.

My basic premise is that elderly persons have special housing requirements and deserve special consideration with respect to housing and related needs. See, *e. g.,* the Senior Citizens Nonprofit Rental Housing Tax Law, *N. J. S. A.* 55:14I-1 *et seq;* Senior Citizens Recreational Opportunities Act of 1968, *N. J. S. A.* 52:27D-29.1 *et seq;* generally, N. J. Dept. of Community Affairs, "The Impact of Retirement Communities" (1974). Housing for elderly people is one aspect of the generally acknowledged need for greater housing for many classes of people. See, "New Horizons in Housing," A Special Message by William T. Cahill, Governor of New Jersey (1972); "A Blueprint for Housing in New Jersey," A Special Message by William T. Cahill, Governor of New Jersey (1970); also *N. J. S. A.* 55:16-2. Housing needs are clearly encompassed within the general welfare and indeed may embrace a governmental imperative. "It is plain beyond dispute that proper provision for adequate housing of all categories of people is certainly an absolute essential in promotion of the general welfare required in all local land use regulation." *So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp.,* 67 *N. J.* 151, 179 (1975); *De Simone v. Greater Englewood Housing Corp. No. 1,* 56 *N. J.* 428 (1970); *Oakwood at Madison Inc. v. Madison,* 117 *N. J. Super.* 11 (Law Div. 1971), appeal pending.

There must also be invoked in these circumstances the presumption that the municipal zoning ordinance is valid. *Vickers v. Gloucester Tp. Comm.,* 37 *N. J.* 232 (1962), *cert.* den.

and app. dism. 371 *U. S.* 233, 83 S. Ct. 326, 9 L. Ed. 2d 495 (1963); *Ward v. Montgomery Tp.*, 28 *N. J.* 529 (1959). That presumption of validity may be overcome only upon a clear and affirmative showing that the ordinance is arbitrary or capricious, bears no reasonable relationship to the public health, morals, safety or general welfare or is plainly contrary to fundamental principles of zoning or the statute, *N. J. S. A.* 40:55–31, 32. *Bow & Arrow Manor v. West Orange,* 63 *N. J.* 335 (1973); *Harvard Ent. Inc. v. Madison Tp. Bd. of Adj.,* 56 *N. J.* 362 (1970); *Kozesnik v. Montgomery Tp.,* 24 *N. J.* 154 (1957).

The particular amendments to the local zoning ordinance, which are the subject of this suit, recite that provision for safe, adequate and modern housing for persons over 52 years of age is in the public interest, necessary and desirable for the public welfare, and that control and regulation of the design of such communities is necessary to safeguard the public health, safety and welfare. The purpose of the amendment is to provide in the R–A zone, with open agricultural areas, large lot residential development and senior citizen communities. These communities require one or more parcels of land with a contiguous total area of at least 500 acres. Uses which are permitted in senior citizen communities are one-family dwellings and one-story attached dwellings such as townhouses and apartments, limited commercial facilities and service establishments "intended primarily for the use and convenience of the residents" of the community. In addition, certain recreational and cultural uses are required for the sole benefit of the community members and their guests, including at least a clubhouse and recreational building or a shuffleboard court or swimming pool or combination of these facilities. Shopping centers may also be allowed as a special permitted use.

Other provisions of the ordinance contain detailed and tailored specifications with respect to residential density, building coverage, minimum floor areas, setbacks and distances between buildings, length of blocks, roads and drain-

age, off-street parking, utilities and lights, sanitation, fire protection, "green areas," including lakes or streams which in part must be dedicated as a park with suitable landscaping and the protection of top soil, trees, water courses and unique physical geographical and historic landmarks.

This ordinance thus represents a comprehensive scheme for the regulation of the physical use of land. It is comparable in overall design to several ordinances for senior citizens communities, copies of which were made available through the New Jersey State League of Municipalities. Such ordinances have been enacted and senior citizen community developments presently exist in several municipalities. "The Impact of Retirement Communities," *supra*. It is the evident purpose of these municipal enactments, and that of the Woodland Township ordinance, to regulate and control in a comprehensive fashion the physical use of land, molded to the objective that a special type of community or neighborhood will thereby be established and evolve with qualitative characteristics uniquely related to a style of life appropriate for older persons.

The trial judge, according to my perception, was correct in his partial conclusion that "authorization of a senior citizen community as a land use regulation is not foreign to the authority granted to municipalities in the enabling act * * *." 128 *N. J. Super.* at 384. The majority of this court, however, has overruled this aspect of the determination, drawing support from *Taxpayers Ass'n. of Weymouth Tp. v. Weymouth Tp.*, 125 *N. J. Super.* 376 (App. Div. 1973), appeal pending.

Aside from whether *Weymouth Tp.* is correctly decided, I believe it is distinguishable. There the court held that a municipality could not limit the occupancy of mobile homes to persons over the age of 52 years. While the age limitation of 52 years has been utilized in the Woodland Township zoning ordinance as a basis for residency within the senior citizen community, that limitation is only one of a matrix of provisions for the regulation of the use of land and is re-

lated functionally to the establishment of a neighborhood suitable for older persons. In this perspective, reliance upon *Bridge Park Co. v. Highland Park,* 113 *N. J. Super.* 219 (App. Div. 1971), is similarly misplaced. There the court held that the municipal zoning power cannot lawfully be exercised to govern the ownership of land rather than its physical use. Here, to iterate, occupancy qualifications according to age is only one aspect of a comprehensive scheme for land use development. *Contra, Hinman v. Planning and Zoning Comm'n,* 26 *Conn. Sup.* 125, 214 *A.* 2d 131 (Com. Pl. 1965).

The trial judge, and the majority, conceived that the Achilles heel of this ordinance inhered in its limitations of residents as to age and occupancy. Section 8(a) of the ordinance, quoted in both opinions, confines permanent residency of the senior citizen community to persons 52 years of age or over; additionally, a child or ward of such a resident, over the age of 19 years, may live with the older occupants but such occupancy within a dwelling unit is limited to three individuals. The court below aptly framed the legal issue, *viz*:

The question whether the line to be drawn to define "senior citizen" as a qualification for occupancy ought to be by a numerical age or whether some other means of definition or identification ought to be devised is a matter of exercise of discretion and normally, in matters of this kind, that exercise of discretion is a legislative rather than a judicial function. The court's function, on review, is to determine whether there is a rational relationship between the legislative line drawn and the goals sought to be attained. In the absence of such relationship, the drawing of the line would be arbitrary and not sustainable. [128 *N. J. Super.* at 383]

The trial judge concluded that the age qualification was "constitutionally impermissible" and did not bear any realistic relationship to a recognized objective of zoning legislation. The majority of this court makes a precatory concession that "senior citizens may have special housing needs meriting special considerations." Those needs, in my view, are a genuine and sore concern of government and constitute a

legitimate and priority objective upon which the zoning powers of a municipality can be exercised. In a variant context it was said that "[t]he question of whether a citizenry has adequate and sufficient housing is certainly one of the prime considerations in assessing the general health and welfare of that body." *N. J. Mortgage Finance Agency v. McCrane*, 56 *N. J.* 414, 420 (1970). The legislative conception of the public health and general welfare, as expressed in *N. J. S. A.* 40:55–32, is expansive. *So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., supra; Roman Catholic Diocese of Newark v. Ho-Ho-Kus*, 42 *N. J.* 556 (1964) ; *Id.* 47 *N. J.* 211 (1966) ; *Ward v. Montgomery Tp., supra; cf. Kunzler v. Hoffman*, 48 *N. J.* 277 (1966).

The present zoning statutes, without additional specific enabling legislation, are sufficiently broad in their sweep to sanction affirmative local action in promoting the public good. *So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., supra*, 67 *N. J.* at 193 (Pashman, J. concurring). This may include the implementation of this broad statutory authority by appropriate regulation of land use for senior citizen communities. The failure of passage of a recent proposed zoning amendment, Assembly Bill 1338, through the Governor's veto, which amendment would have authorized specifically the regulation of land use for senior citizen communities, is not persuasive, under the circumstances, on the issue of the intent of the Legislature as to the parameters of the general welfare as reflected on the basic zoning laws. *Cf. Donaldson v. No. Wildwood Bd. of Ed.*, 65 *N. J.* 236 (1974).

It has not been shown, on this record, that the age and occupancy requirements of the township ordinance are not reasonably and functionally focused upon the salutary goal of meeting the demands of older people for housing and related needs. While there may be other techniques or approaches for defining the composition of a community to consist of older persons, certainly age as a criterion is logical and conducive toward attaining the end sought. It bears a reasonable relationship to a permissible objective of zoning.

*Cf. Vickers v. Gloucester Tp. Comm., supra; Schmidt v. Newark Bd. of Adjust., 9 N. J. 405 (1952) ; Napierkowski v. Gloucester Tp., 29 N. J. 481 (1959).*

It is contended by plaintiff that section 8(a) of the ordinance unconstitutionally and unlawfully restricts the numbers· and kinds of persons who may reside together within a dwelling unit in a senior citizen community. On constitutional grounds support for these restrictions may be found. *Village of Belle Terre v. Boraas,* 416 *U. S.* 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974). The limitation as to the relationship of individuals who may reside together in residential communities, however, has been considered invalid on statutory grounds in different contexts. *E. g., Kirsch Holding Co. v. Manasquan,* 59 *N. J.* 241 (1971) ; *Gabe Collins Realty, Inc. v. Margate City,* 112 *N. J. Super.* 341 (App. Div. 1970). Such regulations, when imposed to eliminate, discourage or suppress antisocial conduct or activities thought to be offensive to the general atmosphere of a residential neighborhood, quite properly have been considered overreaching and invalid. The evils to be combated by such regulations can more appropriately and directly be controlled by other measures under the police powers of a municipality or by other regulatory techniques under the zoning laws. *Kirsch Holding Co. v. Manasquan, supra;* generally, also see, *Napierkowski v. Gloucester Tp., supra,* 29 *N. J.* at 491; also, *Donadio v. Cunningham,* 58 *N. J.* 309, 326, n. 8 (1971).

Here, in contrast, provisions as to occupancy appear integrally related to the overall design of promoting the physical use of land for the development of a unique community of and for older persons. It has not been demonstrated by the opponents of this ordinance that the objective could be more effectively accomplished through the exercise of the municipal police powers or other zoning regulations. Thus, the presumption of the validity of these particular regulations as to age and occupancy has not been overcome. I would conclude, therefore, that these limitations are lawful. It might also be noted, in passing, that if it be proved in an-

other case that the regulations as to age and occupancy are arbitrary, unreasonable and invalid, or that, as applied in a particular situation, they are unlawful or unconstitutional, there is a severability clause in the ordinance which might, if appropriate, be invoked. Consideration of that issue in this litigation, however, would be premature.

The trial judge also determined that the age and occupancy restrictions were unconstitutionally discriminatory. The ordinance permitting senior citizen communities may have the potentiality for this mischief — the invidious exclusion from the municipality of persons entitled to reasonable housing. Compare *Molino v. Glassboro Mayor and Council,* 116 *N. J. Super.* 195 (Law Div. 1971) ; also *Rudderow v. Mt. Laurel Tp. Comm.,* 114 *N. J. Super.* 104 (Law Div. 1971), rev'd 121 *N. J. Super.* 409 (App. Div. 1972). The ordinance, however, does not designate a use district exclusively for senior citizen housing and it is not suggested that in its failure to provide an exclusive district for this use, the ordinance transcends the authority of the zoning statutes. *Cf. So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., supra,* 67 *N. J.* at 166, n. 6, and 182 ; *Rudderow v. Mt. Laurel Tp. Comm., supra,* 121 *N. J. Super.* 409. Rather, the ordinance allows such a use in an R–4 district as one of several "special uses." There has been no showing, *prima facie* or otherwise, that the allowance of such a use within the township trenches unduly upon other land areas available for general housing or would bar entry into the municipality of all classes of persons in need of reasonable housing. *So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., supra.*

I would, therefore, reverse the decision of the court below and uphold the validity of the ordinance.